In the Matter of the Estate of LLOYD MEEGEE COFER, Deceased.

Surrogate's Court, New York County, July, 1923.

**Executors and administrators — discovery proceeding — surrogate has jurisdiction only as to personal property — evidence showing conversion of securities by respondent — order directing restitution.**

The jurisdiction of the surrogate in discovery proceedings is limited to " money or other personal property."

Where, therefore, property sought to be discovered included real estate conveyed to the respondent by the decedent a few months prior to his death and also moneys diverted by respondent in cash and in bank or the proceeds of the sale of securities belonging to the decedent and converted by the respondent, the surrogate is without jurisdiction to make a decree affecting such property.

In such case the representative of the estate must proceed in equity to follow the trust fund or to set aside the conveyances of the real estate or bring an action at law for conversion.

From the appearances of witnesses upon the stand, their irreconcilable stories, their false statements upon material points and the contradictory and untruthful testimony given by the respondent, the court was convinced that certain certificates of stock of various Standard Oil companies having been indorsed in blank by decedent, were subsequently altered without his knowledge by the insertion of the name of the respondent as transferee and that there was no gift or transfer of said certificates from him to her. It further appeared that though two of said certificates were bought for the account of decedent with his money and delivered to him less than a month before he died, when he could not write, said securities were neither offered in evidence nor was proof made of a gift of the same to respondent, but after the death of decedent said securities appeared in the personal account of the respondent on her broker's books. *Held*, that said certificates of stock were the property of the estate of decedent and the delivery of the certificates to the administratrix is directed.

New certificates for the other shares alleged to have been assigned by decedent to respondent upon the surrender of the old certificates were pledged by her for a loan and thereafter she continued to receive the dividends and the certificates were not indorsed to the pledgee. *Held*, that in view of the prosperous financial condition of the respondent at the time of the alleged loan the circumstances thereof were at least suspicious, and under section 205 of the Surrogate's Court Act, the property being under her control, a decree will be granted directing the delivery thereof, subject to any equities or legal rights of the pledgee.

Decree with directions as indicated in the opinion of the court granted, with costs to the petitioner.

DISCOVERY proceeding.

*John E. O'Brien,* for administrator, petitioner.

*Henry H. Snedeker (Martin Conboy,* of counsel), for May Bell Becks Cofer, respondent.

FOLEY, S.   This discovery proceeding was brought under the provisions of sections 205 and 206 of the Surrogate's Court Act, against May Bell Becks Cofer, to obtain certain property alleged to belong to the estate.   The respondent and all the parties are colored people.

In a previous proceeding it was determined that the administratrix herein, Cassandra Cofer, was the lawful wife of the decedent at the time of his death, and that the alleged marriage between him and May Bell Becks Cofer, the respondent, was void.   *Matter of Cofer,* 119 Misc. Rep. 587.   This decree was affirmed by the Appellate Division.   N. Y. L. J. April 7, 1923.   Pending the appeal to the Appellate Division the present proceeding was stayed.   After the affirmance, the hearings were begun, in April, 1923.   The property sought to be discovered included four separate groups: (1) real estate conveyed by the decedent to the respondent a few months prior to his death; (2) moneys diverted by her in cash and in bank or the proceeds of the sale of securities belonging to the decedent and converted by the respondent; (3) household furniture and other property of a similar nature; (4) securities of Standard Oil corporations and other companies alleged to be in the possession of the respondent.

No answer was filed by the respondent alleging title to the disputed property, and the inquiry continued for several hearings before any question as to title was raised.   I have, however, treated the entire proceeding as a trial of the issues, as if title in the respondent was alleged in her verified answer, and full opportunity has been given to her to produce witnesses and to submit exhibits in support of her claim.   My determination is, therefore, upon the merits.

Testimony as to the diversion of the real estate was excluded by the surrogate.   The jurisdiction of this court in discovery proceedings is limited to " money or other personal property."   The decree terminating the proceeding can only direct the delivery of specific money or personal property, and the surrogate is without power to direct the payment of the proceeds resulting from the sale of specific property, even though it has been converted by the respondent.   *Matter of Heinze,* 224 N. Y. 1.

Section 205, however, permits the inquiry to proceed to ascertain the knowledge or information of the respondent with regard to the diversion and to aid the administrator or executor to obtain

information as to the whereabouts of the property. The surrogate, therefore, is without jurisdiction to make a decree affecting groups 1 and 2 mentioned above. The representative of the estate must pursue her remedies against the respondent by appropriate actions in equity to follow the trust funds, or to set aside the conveyances of real estate, or at law for conversion.

As to the third group, which includes the household furniture, I find that the respondent has neither in her possession nor in her control any such property belonging to the estate.

The only question to be determined, therefore, is the ownership of the securities in the fourth group in the possession of the respondent, or alleged to have been transferred to her by the decedent shortly before his death.

The burden of proof in a discovery proceeding is upon the respondent who sets up a gift. *Matter of Housman*, 224 N. Y. 525; *Matter of Canfield*, 176 App. Div. 554; *Matter of Humphrey*, 183 N. Y. Supp. 133.

It should be noted at the beginning of this discussion that the sections of the Surrogate's Court Act relating to discovery proceedings have been gradually amended to enlarge the jurisdiction of the Surrogate's Court. Before 1914, when title was disputed the court was ousted of jurisdiction. Section 40 of the Surrogate's Court Act was amended by chapter 439 of the Laws of 1921 so as to give complete equitable jurisdiction in such proceedings, thus overcoming the effect of the decision in *Matter of Mondshain*, 186 App. Div. 528, which held that the Surrogate's Court had no equitable jurisdiction in such proceedings. But the language of section 206 of the Surrogate's Court Act still limits the decree to the delivery of *specific property*. It would seem that in the interest of simplicity of procedure and the avoidance of burdensome litigation further jurisdiction should be conferred, authorizing the surrogate to decree the payment by the respondent of the reasonable value of the property diverted from the estate where it has passed from his possession, or to direct payment of the proceeds of its sale.

The decedent died August 6, 1922. He had been taken ill and was continuously confined to his home from February of that year. On June 19, 1922, he is alleged to have executed a power of attorney to the respondent, and when he was unable to sign his name, she signed checks upon his bank account and withdrew large amounts therefrom. He had a safe deposit vault, and there is a power of attorney in evidence which it is claimed was executed on July seventh, authorizing her to open it. It is asserted by the respondent that on July 5, and July 8, 1922, the decedent signed

Misc. 292]      Surrogate's Court, New York County, July, 1923.

the indorsements on several certificates of stock of various Standard Oil companies. Some of these assignments were witnessed by one Stevens, a notary, others by Mary Solomon, a maid in the employ of decedent, and others by one Manning, a friend. The name of the transferee (the respondent) in each case is in the handwriting of Stevens, the notary. The alleged signature of the decedent upon these various certificates varies to a great degree. In some cases it is bold and regular as if written by a man in good health. In others, dated the same day, it is shaky and scrawling, as if written in bad health. The ink of the signature in each case is plainly different from that of the notary and the witnesses, and from a personal inspection of the certificates, the signature of Cofer appears to have been written long before the other writings.

After these indorsements were filled in the certificates were sent to a broker for transfer to the respondent. The letters accompanying them with instructions were not signed by Cofer. In one case the letter was signed by the notary Stevens in the name of Cofer, and there is an apparent attempt on the exhibit to show that Cofer made his mark. The witness Stevens, however, swore at first that he wrote no such letter. When it was produced from the files of the broker he admitted, after some hesitation, writing it and stated that it was not intended to be sent but was drawn by him as a draft from which an original was to be made and signed by Cofer. Another group of certificates was accompanied by a letter written by the witness Mary Solomon, to which Cofer's name had been signed by her and the same character of mark made by her as on the communication written by Stevens. Manning, who witnessed a few of the certificates, at first swore that he signed them three months before Cofer's death, although the certificate was dated but one month before his death. At first he could not remember whether there was any writing in the printed form of assignment. Although such a transaction would ordinarily be completed at one session, and the same person would have acted as a witness, the assignments here are attested separately by three different witnesses. Manning swore that Stevens was not present when he witnessed two of the certificates. There is no explanation why it was necessary for the notary who had written out all the assignments, to witness some himself and have the maid, Solomon, attest some and Manning others upon the same day. No clear or convincing proof of delivery of the certificates to the respondent was given by any of the witnesses.

The respondent's testimony throughout her numerous examinations was evasive and in many important matters false. At first she denied that she had any property belonging to the estate.

When later examined she swore that the stock certificates were purchased in part with her money and that a few had been transferred to her. The documentary evidence, on the other hand, shows conclusively that the great majority of approximately forty certificates of stock were purchased by the decedent before the alleged marriage with her took place and long before he knew her. The contention of counsel for the respondent that few of the shares in dispute were purchased before marriage and that numerous purchases were made after the marriage, is not sustained by an examination of the exhibits. Several certificates have been omitted by him in his discussion of this point in his brief. Between May 15, 1919, when the marriage took place, and August 6, 1922, when he died, the total amount of cash paid to the brokers for the purchase of new securities amounted to approximately $1,000. A few other stocks were purchased with the proceeds of the sale of shares held by him for several years before he knew her, and the transaction was really an exchange.

Respondent at first swore that she did not have any property belonging to the estate. When the individual safe deposit box of the respondent was examined by consent of the parties, several unindorsed certificates in the name of the decedent were found there. Her testimony upon this material point was, therefore, willfully false. After the discovery of this situation, the attorney for the respondent, because of statements made to him by his client which he termed disclosures, sought the advice of the surrogate as to whether he should not withdraw from the proceeding. The facts disclosed to the attorney by the respondent were not made known to the surrogate. About the same time, the production of the correspondence from the broker's office proved that the respondent had testified falsely that certain letters written to the broker were in the handwriting of the decedent. This attorney was advised that the question of his withdrawal was one solely for his personal decision. A few days thereafter he retained counsel who continued the proceeding to its conclusion.

Experience shows that the tracing of trust property diverted from an estate is extremely difficult. The evidence here, however, is sufficient to show title to the disputed property in the estate. The circumstances here are typical of the fraud that may be perpetrated by a person having access to the property of a decedent.

The relations between the decedent and the respondent were most confidential, both in the capacity of alleged man and wife, and in the capacity of principal and agent. The respondent had access to all the property of the decedent in his home and safe deposit vault, under the powers of attorney alleged to have been executed

by him.   There is a presumption of fact that the title to property owned by and in the name of a decedent continues in him.   The facts here are much similar to those in the cases of *Matter of Perry,* 129 App. Div. 587, and *Richards* v. *Wells-Fargo Express Co.,* 156 App. Div. 268.   In both these decisions the determination was against the gift.

The proof of a gift must be clear, convincing, strong and satisfactory (*Matter of of Van Alstyne,* 207 N. Y. 298, 306), although the rule is not changed which requires the respondent to prove the gift by only a fair preponderance of the evidence.   *Ward* v. *N. Y. Life Ins. Co.,* 225 N. Y. 314; *Matter of Sherman,* 227 id. 250.   Where the relationship between the parties is a fiduciary one, the trier of facts must scrutinize more closely the proofs.   I am convinced from the appearance of the witnesses upon the stand, their irreconcilable stories, their false statements upon material points, and the contradictory and untruthful testimony given by the respondent that these certificates, having been indorsed in blank by the decedent, were subsequently altered without his knowledge by the insertion of the name of the respondent as transferee, and that there was no gift or transfer by him to her.   Typical of the conduct of the respondent is the written evidence which shows that one certificate of Standard Oil Company of New York and one certificate of the Ohio Oil Company were bought for the account of the decedent with his money and delivered to him on July 19, 1922.   It is clear that the decedent could not write at that time.   No proof whatever of a gift of these securities has been given, nor have they been offered in evidence, but after his death these securities appear in the personal account of the respondent in her broker's books.   I find that these shares of stock are the property of the estate, and direct the delivery of the certificates to the administratrix.

New certificates for the other shares alleged to have been assigned to the respondent were issued to her upon the surrender of the old certificates.   These were pledged for an alleged loan of $500 with one Dr. McGlendon.   The mere pledge of securities, however, cannot defeat the direction to deliver property withheld from the estate.   After the alleged loan the respondent continued to receive the dividends, and the certificates were not indorsed to the pledgee. The circumstances of the alleged loan, in view of the prosperous financial condition of the respondent at the time are, to say the least, suspicious.   Under section 205 of the Surrogate's Court Act, the property is under her *control* and the decree of the surrogate directing delivery is enforcible against her, subject to any equity or legal rights of the pledgee.

Submit decree directing (1) the delivery to the administratrix

Surrogate's Court, New York County, July, 1923.          [Vol. 121

of the certificates of the Standard Oil stock set forth in Exhibits 1, 2 and 3; and (2) the certificates of stock for one share of Ohio Oil Company and one share of Standard Oil Company of New York; (3) the parties having consented, the decree should also direct the payment of the proceeds of the check signed by the respondent as attorney in fact after the death of the decedent when her agency had terminated; (4) directing the delivery of all certificates of stock in the possession of the respondent in the name of the decedent, including the Anglo-American Oil securities.

Costs will be allowed the petitioner.

Decreed accordingly.