In the Matter of the Accounting of PAULINE YASILONIS, as Administratrix of the Estate of STANLEY YASILONIS, Deceased.

Surrogate's Court, Broome County, November 9, 1953.

*Marvin Tanenhaus* and *Richard F. Kuhnen* for administratrix, petitioner.

*Nathaniel L. Goldstein, Attorney-General (John F. Hmiel* of counsel), for the State of New York, respondent.

PAGE, S. The petitioner herein, as widow of the deceased, was duly appointed administratrix of his estate. In this proceeding for the judicial settlement of her account as such administratrix, in Schedule "D" of the account, she, as administratrix, assumed to allow to herself individually a "Claim of Pauline Yasilonis $12,964.92." As developed in the hearing herein, this amount represents one half of the net estate of the deceased.

In this case, besides his widow, the only named distributee of the deceased was his father, Ignatz Yasilonis, last known of Rajonia Joniskelis, Lithuania. The latter has not been heard from since sometime about the beginning of World War II. It is not known whether he survived the decedent, or, if so, whether he is living or dead at the present time. Citation herein was issued in the name of said Ignatz Yasilonis and, in the usual wording, to any other successors in interest if any there might be, and served by publication. The petitioner was also required to issue and serve a citation on the Attorney-General, who appeared herein, and has filed an objection to the allowance of the said claim to Pauline Yasilonis.

The story of the course of financial transactions between the deceased and his wife was quite clearly developed. The deceased immigrated to this country about forty years ago. Shortly thereafter the petitioner, also by nationality Lithuanian, came to this country. Both became employees of the Endicott Johnson Corporation at Johnson City, N. Y., where they became acquainted with each other and intermarried March 25, 1916. During all the years since then until a short time before the death of the deceased, they both continued as wage earners almost constantly employed throughout all these years. The savings portions of their wages were deposited in savings accounts in their individual names respectively. After these savings had accumulated to a considerable extent, the deceased, through the influence of a mortgage broker, began to invest their savings in mortgages. The deceased was intelligent and literate. He had a wide acquaintanceship with, and participation in, Lithuanian fraternal organizations. His wife, Pauline, was not nearly so well educated or keen mentally as her husband and left the management of their financial affairs to her husband. As a result of this course of conduct, the assets of Stanley's estate have turned out to be mostly mortgage investments standing in his name alone.

Clearly there was never any intent on his part to defraud his wife. The evidence tends to show that Stanley had it firmly in mind that, having no children, he did not need to make a will or provide that investments be in the names of himself and his wife jointly; that is, that his wife would, in the event he might predecease her, automatically come into his entire estate.

As is shown by the evidence and in nowise disputed by any respondent, there is no doubt but that the funds invested in securities which are now the assets of deceased's estate were derived fully to the extent of one half thereof from deposits in savings accounts owned separately by and in the sole name of the claimant, Pauline Yasilonis.

The theory in support of her claim is that of a constructive trust to prevent unjust enrichment of the deceased's estate at the personal expense of his wife, who is now his widow.

For an expression of the broad basis of the application of this theory, see *Beatty* v. *Guggenheim Exploration Co.* (225 N. Y. 380, 386), in which Judge CARDOZO stated the general proposition as follows: " A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the

holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee (*Moore* v. *Crawford,* 130 U. S. 122, 128; Pomeroy Eq. Jur. sec. 1053)."

In innumerable instances where the device of a constructive trust has been utilized as an instrument of equity, a basic element in the situation producing such a result has been some species of fraud in connection with some sort of a fiduciary relationship. The legal concept of a " fiduciary " is fairly clear-cut and definite. It comprises instances such as guardians, administrators, trustees, executors and a number of others that can be readily called to mind wherein the fiduciary, in his handling of affairs affecting the interests of those to whom he is responsible, is held to the highest standard of integrity and fair dealing. Analogous to such strictly fiduciary relationships and, in a majority of instances, requiring a similar disposition are confidential relationships. In some decisions these two terms have been used as synonyms. In many cases, however, the latter expression has been employed as a designation of a relationship similar to but not identical with a fiduciary relationship of some well-defined category thereof. What would appear to be a fair statement of the development of our law along this line was stated in the case of *Kochorimbus* v. *Maggos* (323 Ill. 510, 518), where the court said: " A party may voluntarily assume a confidential relation towards another, and, if he does so he cannot thereafter do any act for his own gain at the expense of that relation. * * * A fiduciary relation is not limited to cases of trustees and *cestui que trust,* guardian and ward, attorney and client, or other recognized legal relation, but it exists in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed."

The difficulty which must be encountered and dealt with in the present case is the absence of any basis whatever for an implication of fraud on the part of the husband, or abuse of the confidence reposed in him by his wife, in taking over and investing his wife's money in his own name only.

A review of many cases sustaining a constructive or resulting trust shows that the criterion in these cases has been some sufficient evidentiary basis of an inference that some species of fraud had been practiced by the party sought to be held liable as a constructive trustee. It would seem that this would always be so as between parties on a parity and " dealing at arm's length " with each other. In cases of a fiduciary relationship, or its equivalent confidential connection, at least, the implication of fraud need not be so flagrant.

But, in the present case, there is not even a basis for a suspicion that the husband ever intended to take any financial advantage of his wife. Under such circumstances, would the confidential relationship alone ever be a sufficient basis for constructing a resulting trust?

There are few reported cases dealing with such an extreme situation, that is, where not even a mild species of fraud has been shown or might be inferred.

However, as far back as 1878, our Court of Appeals, in the case of *Boyd* v. *De La Montagnie* (73 N. Y. 498, 502) stated and held: '' It is not found that the defendant acted with a fraudulent intent in procuring the transfer, but I do not understand that this is necessary to be affirmatively shown in this class of cases. A court of equity will interpose its jurisdiction to set aside instruments between persons occupying relations in which one party may naturally exercise an influence over the conduct of another. A husband occupies such a relation to the wife, and the equitable principles referred to would apply to them in respect to gratuitous transfers by the wife to the husband, however it might be in ordinary business transactions, which the wife may legally engage in. When this relation exists the person obtaining the benefit must show, by the clearest evidence, that the gift was freely and deliberately made. The burden is upon the person taking the gift to show that the transaction was fair and proper.''

It is to be noted that the last above-quoted excerpt, in the last sentence, refers to the burden of proof of showing a gift. In the present case the only theory that would stand in contravention of that of the claimant herein would be that, when she, from time to time over a period of many years, signed withdrawal slips and turned over her savings bank books to her husband, that she was making a series of gifts. This theory would be far more untenable than that of a constructive trust. The burden of proof as to a gift is upon the party asserting that a transaction constituted a gift. In supporting such a burden of proof, seven separate and distinct elements of proof must have existed. (For a statement of these elements, see 2 Butler on New York Surrogate Law and Practice, § 1466.) In the present instance, several of these elements of proof which would be requisite for establishing a gift are lacking. Prominent among these is the most essential one of all, namely, intent. In the present case, there is no basis whatever for inferring that there was any intent on the wife's part to make

a gift to her husband, or on his part any idea that he was the donee of a gift from her.

Another contention raised by counsel for the administratrix, in her individual capacity as claimant herein, is that, other than herself, there are no distributees of her husband in this country and that the foreign country in which any such might be found is " behind the Iron Curtain ". This contention has been allowed no weight or consideration whatever. The rights of citizens and residents of foreign countries as distributees of decedents leaving estates to be administered in this country are entitled to the same consideration and measure of justice as those of residents and citizens of our own country. Likewise, the fact that their respective shares might have to be paid into court is wholly immaterial.

Upon the foregoing consideration of the principles involved in the determination of the present issue, I arrive at the conclusion that the petitioner, Pauline Yasilonis, as administratrix of her husband's estate, holds the amount claimed, viz., $12,964.92, as a constructive trustee for herself individually, and that the same is payable to herself individually accordingly. In other words, her personal claim against herself as administratrix is sustained in full, and objection thereto dismissed.

Settle decree on judicial settlement accordingly.