Campbell, S.
Lucy Van Derpool, a widow, the above-named testatrix, died a resident of Schenectady County on June 6,1953, at the age of eighty-six. Her last will and testament was dated March 18, 1935, and codicils thereto were dated June 19, 1939, and September 24,1948. The will nominated Harold I. Blessing, Esq., an attorney and counselor at law of this State as sole executor and he was appointed on July 16, 1953, when the will and codicils of this decedent were admitted to probate.
*133 The New York State estate tax proceedings set forth a gross estate of $34,869.84 and a net estate of $32,014.03.
On October 14, 1954, Mrs. Bessie A. Brandhorst, daughter of decedent, and one of three residuary legatees, petitioned this court for a compulsory accounting which was ordered, and on January 12, 1955, by order of this court, letters testamentary which were previously granted to the said Harold I. Blessing were revoked, he was removed as executor and was further ordered to pay and deliver over all moneys or other property of the estate of said Lucy Van Derpool then in his hands to an administrator with the will annexed. On January 18, 1955, Frank Van Derpool, son of the decedent, was appointed administrator with the will annexed, and he has been acting as such since that date.
Margaretta H. Fryer died April 20, 1954, a resident of Schenectady County. Her last will and testament is dated June 11, 1946, and a codicil thereto dated December 8, 1950. Keith F. Fryer and J. Spoor Hurst were nominated in her will and appointed by this court as executors on June 22, 1954. The New York State estate tax proceedings set forth a gross estate of $55,023.81 and a net estate of $51,848.81.
Frank Van Derpool, by petition dated March 22,1955, alleged “ that on or before the 13th day of August, 1953, the said Harold I. Blessing, as executor of the last will and testament of Lucy Van Derpool, deceased, had on deposit with the Mohawk National Bank of Schenectady, New York, certain monies in excess of Twelve Thousand Seven Hundred and Fifty Dollars ($12,750.00) forming a part of the estate of Lucy Van Derpool, deceased; that on or about the 13th day of August, 1953, the said Harold I. Blessing withdrew from said account Twelve Thousand Seven Hundred and Fifty Dollars ($12,750.00) and caused same to be deposited in certain savings accounts standing in the name of Margaretta Fryer in The National Savings Bank of the City of Albany, 90 State Street, Albany, New York. The Albany Savings Bank, 20 North Pearl Street, Albany, New York, and the Citizens Trust Company, 436 State Street, Schenectady, New York ”. The said Frank Van Derpool asked that an inquiry be had concerning these funds and accordingly on March 30, 1955, this court ordered such inquiry and on July 29, 1955, referred the issues to Del B. Salmon, Esq., counselor at law of Schenectady, to hear the evidence upon the facts as to the issues and report to this court.
Attorney Salmon, under date of September 19, 1955, reported that on August 13, 1953, the said Harold I. Blessing withdrew *134 fronj the funds on deposit in the Mohawk National Bank of Schenectady, to the credit of the estate of Lucy Van Derpool, deceased, the sum of $12,750 by a check signed by him as executor of said estate; that on the same day in exchange for said check drawn by the said Harold I. Blessing as executor and endorsed by him as executor, the Mohawk National Bank issued to Harold I. Blessing individually a cashier’s check in the amount of $12,750 which check was endorsed by Harold I. Blessing on the reverse side thereof; that said check was delivered by Harold I. Blessing to the National Savings Bank of Albany and he deposited $6,035.55 of the said $12,750 in' said bank to the credit of Margaretta H. Fryer by opening a new account; that at the same time the said Harold I. Blessing received from the National Savings Bank of Albany a cashier’s check payable to the Albany Savings Bank in the amount of $6,512.92 and also $201.53 in cash which said three items totaled the sum of $12,750; that the cashier’s check which Harold I. Blessing received from the National Savings Bank of Albany in the amount of $6,512.92 was used by him on said day to open a new account in the Albany Savings Bank in the name of Margaretta H. Fryer; that the said Margaretta H. Fryer was not present when these two new accounts were opened in her name.
The record taken before Del B. Salmon, Esq., as Referee, states: “It is stipulated between the parties through their respective attorneys that on August 17th, 1953, Harold I. Blessing was personally indebted to Margaretta H. Fryer in the amount of $6,035.55 including interest and the further sum of $6,512.02 including interest.”
On June 15, 1955, Frank Van Derpool, as administrator with the will annexed of the Van Derpool estate, verified a petition praying “ that he be adjudged the owner or entitled to the possession of the deposits ” hereinbefore set forth and that he “ recover possession thereof from the said Keith F. Fryer and J. Spoor Hurst, executors of the estate of Margaretta H. Fryer, deceased.”
The answer on behalf of the executors of the Fryer estate alleges “ that all of the monies on deposit in The National Savings Bank of Albany, * * * and on deposit in the Albany Savings Bank, * * * was the property of said Margaretta EL Fryer at the time of her death and your respondents as executors of her last will and testament are lawfully and legally entitled to possession thereof, the said Margaretta H. Fryer *135 having had legal title thereto and came into lawful possession thereof. ’ ’
Both the Van Derpool estate and the Fryer estate are pending in this court. When attorney Blessing withdrew the money from the Van Derpool estate and deposited it in the two new accounts in Mrs. Fryer’s name, the latter was a living person and Mrs. Van Derpool was deceased. Blessing, as executor of the Van Derpool estate, was held to the highest degree of honesty and good faith as a fiduciary and as an executor.
Pursuant to sections 40, 206 and 206-a of the Surrogate’s Court Act, the equitable powers of this court are defined. These powers have been repeatedly cited by Surrogate Wingate, the late Surrogate Foley and by many other jurists.
As far back as 1865 (Boyce v. Brockway, 31 N. Y. 490, 493), Judge Daves, in an action for conversion, stated: “ A wrongful intent is not an essential element of the conversion. It is enough in this action that the rightful owner has been deprived of his property by some unauthorized act of another assuming dominion or control over it.” This was an action in conversion but the justice of the decision, as quoted above exemplifies the point that the court would not and did not uphold wrongdoing.
Former Surrogate Wingate in Matter of Enright (149 Misc. 353, 354) illuminates the authority and power of a Surrogate’s Court to do equity and justice in the administration of estates. This case is cited in Matter of Mathesen (161 Misc. 367, 369). In the Enright case (supra, p. 354), the court stated: “ The referee, after extended hearings, has found that the allegations of the petition are true. On the confirmation of these findings a situation is disclosed where a fiduciary, holding letters of authority from this court, is withholding from the rightful owner property which should be in the possession and within the control of the latter. Further retention would constitute an illegal and unjustifiable act. Under section 40 of the Surrogate’s Court Act the surrogate is granted the particular authority: 3. To direct and control the conduct * * * of executors. ’ They are fiduciaries peculiarly within his jurisdiction and if or when it is made to appear that their actions in an official capacity are unlawful and improper, it is not only within the power, but it is the particular duty, of the surrogate to see to it that their conduct shall conform to the dictates of equity and good conscience. Were this not so, it would be entirely possible for them to cast discredit upon the entire system of decedent distribution. ’ ’ •
*136 The late Surrogate Foley in Matter of Cofer (121 Misc. 292, 294) also discusses the equitable jurisdiction of the Surrogate’s Court in these words: ‘ ‘ The burden of proof in a discovery-proceeding is upon the respondent who sets up a gift. Matter of Housman, 224 N. Y. 525; Matter of Canfield, 176 App. Div. 554; Matter of Humphrey, 183 N. Y. Supp. 133. It should be noted at the beginning of this discussion that the sections of the Surrogate’s Court Act relating to discovery proceedings have been gradually amended to enlarge the jurisdiction of the Surrogate’s Court. Before 1914, when title was disputed the court was ousted of jurisdiction. Section 40 of the Surrogate’s Court Act was amended by chapter 439 of the Laws of 1921 so as to give complete equitable jurisdiction in such proceedings, thus overcoming the effect of the decision in Matter of Mondshain, 186 App. Div. 528, which held that the Surrogate’s Court had no equitable jurisdiction in such proceedings.” (Emphasis supplied.)
In Matter of Wendel (160 Misc. 662, 664) Surrogate Foley emphasizes the “ general equity jurisdiction ” of the Surrogate’s Court in these words: “ The power of the surrogate, under his general equity jurisdiction, to control the acts and conduct of representatives of estates appointed by him (Surr. Ct. Act, § 40) carries with it necessarily the right to require the deposit of funds in banks or trust companies, subject to the control of the court.” (Emphasis supplied.) See Matter of Klein (170 Misc. 859).
The late Surrogate Slater wrote the opinion in Matter of Accles (153 Misc. 421, 422, 423) in which he said: “It is a principle in equity that one from whom money has been obtained by misrepresentation, fraud and felony does not lose title thereto as against the wrongdoer. The money having been obtained by the decedent from the bank by fraud and felony, the bank could recover it from the decedent, if found in his possession, or follow it in the hands of any person who received it without consideration or with notice of the fraud by which it was obtained.” (Emphasis supplied.) This case was unanimously affirmed by the Appellate Division, Second Department. (245 App. Div. 743, 744.)
The money and funds of the Van Derpool estate, now in question, have been traced to the satisfaction of this court, into the possession of the executors of the Fryer estate. This is demonstrated clearly by the testimony of attorney Blessing-under oath before the Referee.
*137 The late Surrogate Foley, recognized as one of the foremost Surrogates of this State, in Matter of Hackfeld (171 Misc. 727, 729, unanimously affd. 259 App. Div. 707) states the rule as follows: ‘ ‘ It is an elementary rule of the law of the administration of estates that where funds and property have been traced and identified as the funds and property of another person, they may not be subjected to the payment of funeral expenses, commissions, administration expenses or debts. Such funds and property do not constitute estate assets and their misapplication or diversion to improper purposes constitutes a breach of trust.” (See cases cited.)
Surrogate Rogan in Matter of Ihmsen (161 Misc. 789, 790), stated: “ Even though the various revisions of section 40 of the Surrogate’s Court Act have vastly broadened the functions of the court, it is still, in essence, one for the administration of justice in ‘ matters relating to the affairs of decedents, ’ as distinguished from controversies involving the rights of the living. (Matter of Rosenblum, 146 Misc. 537.) ” See, also, Matter of Wilson (298 N. Y. 398, 404, 405); Matter of Morris (134 Misc. 374, 382, 383) and Matter of Klein (170 Misc. 859, supra).
In Matter of Clarke (145 Misc. 660, 665) former Surrogate Taylor held that the court has the power to “ take judicial notice of its own records, not only in the case before it, but in others and especially related cases.” (See cases cited.)
Justice and equity demand that this court adhere to the principle that a constructive trust was erected in the Van Derpool estate and that Blessing was duty bound as executor and as an officer of this court, to conserve the funds and assets of this estate and not to use the money for the payment of his personal financial obligations to Mrs. Fryer. This is the formula through which the conscience of equity and of this court finds expression in the interests of justice. This principle is designed to prevent the unjust enrichment of one person at the expense of another person or, in this case, at the expense of the Van Derpool estate. (Latham v. Father Divine, 299 N. Y. 22; Equity Corp. v. Groves, 294 N. Y. 8; Matter of Yasilonis, 204 Misc. 755.)
It is a fundamental axiom in equity that he who comes into court must come with clean hands.
The funds in question in this case have been definitely traced to the satisfaction of this court from the Van Derpool estate to the Fryer estate over both of which this court now has jurisdiction.
*138 Respondents have offered no testimony in rebuttal to Mr. Blessing’s testimony and the documentary proofs which have been received in evidence. Respondents attempt to rely on the fact that the banks involved received the checks in good faith without prior notice of any defects or infirmities in the instruments. However, this case is not against the banks involved; it is against the representatives of the Fryer estate to discover and recover money which clearly came from the Van Derpool estate by reason of the wrongdoing of attorney Blessing.
Mr. Blessing, by his own testimony, wrongfully converted the funds of the Van Derpool estate when he was sole executor thereof and at a time when he was held to the highest degree of fidelity and trustworthiness to the Van Derpool estate and those who were to benefit pursuant to her last will and testament. Such practice and conduct on the part of a sole executor can not be condoned in equity or justice to the petitioner and those whom he represents as interested parties in the Van Derpool estate.
In the opinion of this court, the legal, equitable and just decision in this case must be that the Fryer estate pay back to the representative of the Van Derpool estate the full amount thus acquired by the Fryer estate.
For the reasons above stated, this court in good conscience must hold that respondents, the personal representatives of the Fryer estate, repay to the administrator with the will annexed of the Van Derpool estate the sums of $6,512.92 and the additional sum of $6,035.55, making a total of $12,548.47 with interest thereon from the date of withdrawal from the Mohawk National Bank, namely, August 13,1953; that attorney Harold I. Blessing repay to the representative of the Van Derpool estate the sum of $201.53, which sum he received from the proceeds of the Van Derpool estate, with interest thereon from the above-mentioned date, namely, August 13, 1953, together with costs and disbursements of this proceeding to the administrator with the will annexed of the estate of Lucy Van Derpool, deceased.
Enter decree upon due notice.