THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* NEW YORK CITY AIRPORT, INC., and Others, Defendants.

Supreme Court, New York County, September 8, 1931.

*John J. Bennett, Jr., Attorney-General,* for the People.

*Johnstone & Richter,* for the defendants William Paul Buchler and William Paul Buchler & Co., Inc.

*Stephen Callaghan,* for the defendant John J. Halleran.

*S. Earl Levene,* for the defendant Flying Service of New York City Airport, Inc.

*Roe & Kramer,* for the defendant New York City Airport, Inc., in dissolution.

*McManus, Ernst & Ernst,* for the defendant Edward E. Stapleton.

SHIENTAG, J.   The action is brought by the People of the State of New York against the corporate and individual defendants for violation of the provisions of article 23-A of the General Business Law (§ 352 *et seq.,* added by Laws of 1921, chap. 649, as amd.),

known as the Martin Act, in connection with the sale to the public of securities of the New York City Airport, Inc., and Flying Service of New York City Airport, Inc. The application is for the appointment of a receiver and for an injunction *pendente lite*. The defendants have served their answer and have indicated a willingness to stipulate that the case be set down for trial for the first available date.

On the argument and in the briefs submitted the appointment of a receiver was not stressed. Indeed, under the circumstances of this case, a receiver would hardly serve any useful purpose, and that portion of the application will, therefore, be denied, or if the plaintiff so desires, will be deemed withdrawn. After a careful examination of the voluminous affidavits and exhibits and of the minutes of the hearings held by the Attorney-General, I reach the conclusion that the plaintiff has clearly established, so far as that can be done before a trial, the violation by all of the defendants of the provisions of the Martin Act in connection with the sale to the public of the securities of the two corporations above mentioned. In construing " the Martin Act," the Court of Appeals has held, that " the words ' fraud ' and ' fraudulent practice ' in this connection should, * * * be given a wide meaning, so as to include all acts, although not originating in any actual evil design or contrivance to perpetrate fraud or injury upon others, which do by their tendency to deceive or mislead the purchasing public come within the purpose of the law." (*People* v. *Federated Radio Corporation*, 244 N. Y. 33, 38, per POUND, J.)

The finding that the provisions of the Martin Act have been violated is not at all conclusive, however, on the question as to whether immediate injunctive relief should properly be granted. The New York City Air Port, Inc., and the Flying Service of New York City Airport, Inc., have both been dissolved, so that it is impossible for any further shares of stock of those companies to be issued or dealt in. In the case of the New York City Air Port, Inc., 36,000 out of a total of 38,000 shares sold to the public have been repurchased by the individual defendants Laurence B. Halleran, John J. Halleran and Edward E. Stapleton, at prices which, according to the affidavits submitted, were at least as high as those for which the stock was originally sold. These 36,000 redeemed shares of stock have all been canceled and cannot be dealt in. For the repurchase of the remaining 2,000 shares, the affidavits indicate that a sufficient deposit has been made by the individual defendants named with the Bank of Manhattan Trust Company, of which the outstanding registered stockholders have received notice.

In the case of the Flying Service of New York City Airport,

Inc., all of the outstanding stock held by the public has likewise been repurchased and canceled. It further appears that immediately after the dissolution of the two corporations here involved all signs carrying the name " New York City Air Port, Inc.," were removed from the property. The three individual defendants mentioned appeared at the investigation conducted by the Attorney-General, answered questions put to them, and in general produced the papers and documents called for. Finally, the affidavits indicate that none of the three defendants, Laurence B. Halleran, John J. Halleran and Edward E. Stapleton, has ever before engaged in the sale of securities to the public, nor is any one of them now so engaged; that neither jointly nor individually do they maintain an office for the sale of securities, nor are they members of any copartnership or connected with any corporation engaged in the sale of securities to the public. So far as the defendants thus far named are concerned, there appears to be no substantial reason why an interim injunction should be granted. There is no real danger to be guarded against before the trial, and the plaintiff may, without prejudice to any of its rights, or to the public welfare, await the trial to obtain the relief to which it may then be found to be entitled.

While pressing his application as against all of the defendants, the representative of the Attorney-General, at the conclusion of the argument, urged that in any event the remaining defendants, William Paul Buchler and William Paul Buchler & Company, Inc., are in a different position than the others. With that I agree. Buchler and his company acted as selling agents for the stock of the airport and flying service corporations. Buchler and his company are dealers in securities; they are in the business of selling securities to the public. Their conduct prior to the trial of the action is, therefore, a matter of grave public concern. At a certain stage of the investigation conducted by the Attorney-General the deputy in charge made the statement: " When I am through with Mr. Buchler I will ask for the arrest of this witness on the ground of larceny, and I will charge larceny on the New York Flying Service Company." Thereupon Mr. Buchler, on the advice of his counsel, refused to continue with the hearing and to answer any further questions. He was advised by counsel: " You may plead ˋyour constitutional privilege; you may refuse to answer any question, I advise you, on the ground that you may be subject to criminal prosecution." The witness thereupon stated: " I do so plead," and he refused to answer on the ground that he might be subjected to criminal prosecution. (Minutes, Attorney-General's Investigation, pp. 1203, 1207.) The defendant Buchler under the circumstances may well have been within his legal rights in refusing to answer any questions for the

reason stated by him. On this application, however, that is entirely beside the point. The Martin Act was designed to afford " a very substantial protection to the public from those widespread evils which have been perpetrated upon it through lack of adequate safeguards." (*Dunham* v. *Ottinger*, 243 N. Y. 423, 439.) The protection which the Martin Act was intended to furnish would be reduced to the varnishing point if, in a situation of this kind, the court failed to grant immediate injunctive relief.

Motion for injunction *pendente lite* granted as to the defendants William P. Buchler and William P. Buchler & Co., and denied as to the remaining defendants. On the stipulation of the parties the case will be set down for trial on the calendar of Special Term, Part III, for the first available date, the 5th day of October, 1931. Settle order, which shall recite the stipulation and direct the clerk to set the case down for trial as herein indicated.