In the Matter of the Guardianship of DOROTHY ROSENBLUM and EDWARD ROSENBLUM, Infants.

Surrogate's Court, Kings County, February 17, 1933.

*Sidney R. Fleisher*, for the petitioner.

WINGATE, S. This is an application by the guardian of certain infants for an order directing the trustee of an *inter vivos* trust, in which it is alleged her wards possess an interest, to make certain payments of principal to the guardian for the benefit of the wards. No copy of the trust agreement is submitted, but it is alleged that on or about February 13, 1929, a life insurance trust agreement was entered into between the father of the infants and the trustee, under which the latter has come into possession of approximately $89,000 as the proceeds of such policies. It is further alleged that the terms of the agreement provided that the income should be

accumulated until the children reached their majority and should then be paid over to them, with a further direction that if the income payable to the infants under the settlor's will should not equal a specified sum, the deficiency should be made up from the trust *inter vivos.* It is claimed that such condition has occurred and that consequently such payment should be made.

This statement of alleged facts demonstrates that the application is either one for anticipation of a directed accumulation falling within the provisions of section 17 of the Personal Property Law, or for the enforcement of the provisions of an *inter vivos* trust.

Section 17 provides: " When a minor, for whose benefit a valid accumulation of the income of personal property has been directed, shall be destitute of other sufficient means of support or education, the supreme court, at special term in any case, or, if such accumulation shall have been directed by a will, the surrogate's court of the county in which such will shall have been admitted to probate, may, on the application of such minor or his guardian, cause a suitable sum to be taken from the moneys accumulated or directed to be accumulated, to be applied for the support or education of such minor."

It will be observed that the legislative grant of jurisdiction to Surrogates' Courts in this regard is expressly limited to a testamentary trust, wherefore the primary principle of statutory construction, *inclusio unius est exclusio alterius,* becomes applicable with the result that a Surrogate's Court has no authority to make such a direction in respect to a trust not created by will.

When the application is viewed from the alternative aspect, the situation is no more favorable to the petitioner. Whereas the various revisions of section 40 of the Surrogate's Court Act have vastly broadened the functions of the court, it is still, in essence, one for the administration of justice in " matters relating to the affairs of decedents," as distinguished from controversies solely involving the rights of the living. The language of this court in *Matter of Morris* (134 Misc. 374, at p. 382), quoted in the brief of the petitioner, is no authority for her application here, since the present controversy in no wise relates to the estate of a decedent, nor does it concern any relation between a guardian and a ward. The insurance which is the subject-matter of the *inter vivos* trust and its proceeds never formed any part of the estate of this decedent (*Matter of Haedrich,* 134 Misc. 741; affd., 230 App. Div. 763; affd., 256 N. Y. 608), and is not a part of the estate of these infants.

The rights of the wards of the petitioner can be determined only as a result of a construction of the terms of the *inter vivos* trust and the manner of their enforcement differs in no particular

from that applicable to the ordinary contract rights of any other member of the community. There is no more reason or justification for the assumption of jurisdiction by this court of such a controversy than of one in tort against the fiduciary for an injury which one of the infants has suffered while upon its premises.

None of the cases cited by the petitioner is even an approximate authority for the position adopted, when read in the light of the facts adjudicated. On the other hand, there is direct contrary authority in the learned discussion of Surrogate FOLEY in *Matter of Crosby* (136 Misc. 688). (See, also, *Matter of Runk*, 200 N. Y. 447, 460; *Matter of Meehan*, 104 Misc. 219, 221; *Matter of Kaufman*, 113 id. 202, 205.) The application should be made to the Supreme Court and is accordingly denied without prejudice.