In the Matter of the Construction of the Will of EDWARD DE W. NAYLOR, Deceased.

Surrogate's Court, Saratoga County, April 23, 1949.

*William S. Gordon, Jr.,* for James H. Naylor, petitioner.

*David W. Burke,* special guardian for Nancy A. Naylor and others, infants.

TUCK, S. The duly qualified and acting trustees under the will of Edward De Witt Naylor have asked for a decree of the court determining the validity, construction and effect of the disposition of property contained in the last will and testament of said deceased and of a certain deed of trust executed by the deceased on December 18, 1935. The deceased died December 21, 1935. The particular portion of the will of the deceased which requires a construction is paragraph sixth, which reads as follows:

" Sixth: All of the rest, residue and remainder of my property, real, personal and/or mixed, of whatever nature and wheresoever situate which I may own at the time of my decease, or have the right to dispose of, or in which I have any interest, do I give, devise and bequeath to Edward DeWitt Naylor, Jr., and James Henry Naylor, their survivor and successors, In Trust nevertheless for the following uses and purposes, (and I direct my Executors to pay over and transfer to said Trustees, said portion of my Estate):

" (a) To receive, hold or manage said rest, residue and remainder of my Estate as a trust fund; and I direct that they qualify as such Trustees without the necessity of furnishing any bond or bonds.

" (b) To pay over the net income therefrom to my beloved wife, Mary E. Naylor, as long as she may live, provided she does not remarry, together with the power to pay, use and expend so much of the principal thereof and in such amounts and at such times, as they in their discretion shall deem necessary for the maintenance, support, care and welfare of my said wife, as need may require in their discretion.

" (c) Upon the death of my beloved wife, to divide the then principal of said Trust into two equal parts or shares; and the judgment of my said Trustees concerning the value for the purpose of such division shall be binding and conclusive.

" (d) To transfer, assign and pay over the principal of one (1) of said shares or parts to my son Edward DeWitt Naylor, Jr., the same to be his absolutely, if he be then living. And in the event that my said son, Edward DeWitt Naylor, Jr., shall not then be living, the part to which he would have been entitled shall be held by my said Trustees and their successors, In Trust, nevertheless, and the net income therefrom shall be paid over semi-annually, or as said Trustees shall in their discretion determine, together with so much of the principal of said part or share at such times and in such amounts as my said Trustees and their successors may in their discretion deem advisable, in equal parts, share and share alike to the children of my said son, per stirpes and not per capita, him them surviving.

" (e) To transfer, assign and pay over the net income of the other one-half part or share to my son, James Howard Naylor, as follows:

" (1) The net income from said part or share in installments payable semi-annually or as my said Trustees in their discretion shall determine (and if extraordinary need shall require, in the discretion of my said Trustees, then also together with so much of the principal of said trust funds in such amounts and at such times as my Trustees in their discretion deem advisable), to my said son, James Howard Naylor, until he reaches the age of thirty (30) years.

"(2) Upon my said son reaching the age of thirty (30) years he shall be paid outright, the sum of twenty-five per cent. (25%) of the then principal of said trust fund, the same to be his absolutely.

" (3) And when my said son reaches the age of thirty-five (35) years, to transfer, set over and pay to him a further installment of twenty-five per cent (25%) of said trust fund, the same to be his absolutely.

" (4) And when my said son reaches the age of forty (40) years to transfer, set over and pay to him a further installment of twenty-five per cent (25%) of said trust fund, the same to be his absolutely.

" (5) And when my said son reaches the age of forty-five (45), to transfer, set over and pay to him the final installment of

twenty-five per cent (25%) of said trust fund, the same to be his absolutely.

" (f) In case my said son, James Howard Naylor shall predecease me, or shall predecease his mother, or in case that he shall not be living at the time of the payment of any of the aforesaid installments, then I direct my said Trustees to transfer and pay over the said share or part thereof in said trust fund to which my said son James Howard Naylor would have been then entitled, in the same manner and form and in the same amounts as the distribution of the other one-half part in said trust fund is provided for as to my son Edward DeWitt Naylor, Jr., as applied to the family of my said son James Howard Naylor.

" (g) In case both of my said sons predecease me, or die before becoming entitled to the respective shares as is provided herein above, and die without leaving any living child or children them surviving, then do I direct that the share to which either of them would have been entitled shall be distributed to the heirs at law and next of kin of such one of my said sons, and in the event that none are so surviving them to the heirs at law of myself in accordance with the present statutes of the State of New York governing the distribution of intestate Estates."

From the reading of the foregoing paragraph it is at once apparent that while the testator provided in subdivision (b) for the payment to his widow as long as she may live, providing she does not remarry, of the net income from the trust with the power to the trustees to use and expend so much of the principal as they may deem necessary and for the termination of the trust upon the death of his wife, no provision is made for terminating the trust upon her remarriage.

Since the widow of the deceased has not remarried it is unnecessary to consider any legal question in connection with the matter of how the income should be applied in case of her remarriage. The termination of her life estate is predicated upon her death only.

A literal interpretation of subdivision (d) would seem to indicate that in case of the death of Edward De Witt Naylor, Jr., prior to the death of the widow, one half of the original trust fund must be held in trust for the children of Edward De Witt Naylor, Jr., with no limitation of the period for which the trust should operate and no direction as to the payment of the principal other than the limited payments authorized in subdivision (d).

In respect to the trust for James Howard Naylor there is no provision for the payment of the income beyond the time when

he arrives at the age of 30 years and the only provision made thereafter is for the payment of installments of the principal to him. It is plain that the court should exercise the jurisdiction given in section 145 of the Surrogate's Court Act to construe the provisions of the will and so far as may be to give effect to the intent of the testator.

The petitioner has pointed out that should the court determine that the trust established for the children of Edward De Witt Naylor, Jr., in case of his death prior to the death of the widow, is an attempt to suspend the power of alienation beyond the statutory period, then the court must determine that the testator died intestate as to that share or portion of his estate, and in such case James Howard Naylor, should he survive the widow, would receive outright one half of that portion of the estate and the children of Edward De Witt Naylor, Jr., would receive the other half, and in effect would be a determination that the testator intended to give three fourths of his estate to James Howard Naylor and one fourth only to the children of Edward De Witt Naylor, Jr.

A reading of the whole will would seem to disclose the intent of the testator to be a more equitable division of his estate.

A gift of income or property which makes no provision for the disposition of the principal and which states no period of time during which the income is to be paid has been determined as the equivalent of a deed in fee of the property itself. (*Matter of Smith,* 131 N. Y. 239; *Matter of Frayer,* 155 Misc. 811; *Matter of Sackett,* 201 App. Div. 58.)

It is clear from these decisions that the trust insofar as the share of the estate given to the widow for life and to Edward De Witt Naylor, Jr., upon her death, or should he predecease the widow, then to his children in trust, constituted in fact a contingent remainder in fee to the children and to that extent the court holds and determines the trust to be valid.

Such a construction of the will renders the provisions valid, legal and operative rather than void and in nowise strains at the apparent intent of the testator as to the real scheme of his testamentary disposition of his property. (*Hawthorne* v. *Smith,* 273 N. Y. 291; *Morris* v. *Morris,* 272 N. Y. 110; *Roe* v. *Vingut,* 117 N. Y. 204; *Du Bois* v. *Ray,* 35 N. Y. 162.)

The same authorities apply also to the similar provisons of the will established for the benefit of James Howard Naylor. In his case as in the case of Edward De Witt Naylor, Jr., the intent of the testator was to give one half of his estate for the benefit

of each of his sons and one half so given to be for the benefit of the children of that son.

In respect to the interim for which no direction is given for disposing of the income from the James Howard Naylor share, the provisions of section 63 of the Real Property Law of New York apply, since there is a suspension of the power of alienation during which the rents and profits are undisposed of and no valid direction for their accumulation. Consequently such rents and profits belong to the person presumptively entitled to the next eventual estate and that person is James Howard Naylor. After the death of his mother he is entitled to receive the income from the installments held in trust until the final installment is distributed to him, or until he dies sooner. In case of his death subsequent to the death of his mother but before the final installment of the principal shall have been paid, we hold and find that it was the intent of the testator in such case that the children of James Howard Naylor, if any, should take in the same manner as provided for the children of Edward De Witt Naylor, Jr.

The court believes that the language of subdivision (g) is of itself sufficiently clear and that no occasion arises for a judicial construction of that subdivision.

The court declines to determine that it has jurisdiction to construe the provisions of the trust indenture.

In *Matter of Hyams* (237 N. Y. 211 [1923]) the Court of Appeals held that in a discovery proceeding instituted under the statute (Surrogate's Ct. Act, §§ 205, 206) the Surrogate has no power to determine the title or right to any property other than that that belonged to the deceased in his lifetime.

In this instance the testator's widow interposed an answer to the petition alleging the gift of securities to her by her husband, some of which she still had on hand and some of which she had sold and the proceeds invested in other securities, and the effect of the opinion of the Court of Appeals is that the Surrogate's Court has no power to construe the effect of a gift *inter vivos* so far as its jurisdiction in discovery proceedings are concerned.

The question certified to the court in that instance or in that matter was: " 1. In the circumstances disclosed by this record, did the surrogate have jurisdiction to hear, try and determine the question whether there was a valid gift of the bonds enumerated in the petition other than the Westinghouse bonds?" That question was answered by the court in the negative.

In *Matter of Koehler* (134 Misc. 532 [1929]) Surrogate FOLEY writing for the court, held that the Surrogate's Court has ample jurisdiction to hear and determine the issues involved between the claimant and the estate. The claim was made against the estate upon the basis of an *inter vivos* deed of trust.

In *Matter of Crosby* (136 Misc. 668 [1930]) Surrogate FOLEY determined that section 40 of the Surrogate's Court Act with its comprehensive grant of equitable powers, does not confer jurisdiction over an *inter vivos* trust.

In *Matter of Rosenblum* (146 Misc. 537 [1933]) Surrogate WINGATE determined that the Surrogate's Court cannot assume jurisdiction of an application for an order requiring the trustee of an *inter vivos* trust, the subject matter of which is insurance, to make payments to a petitioner as guardian of the infant children of the father who executed the trust agreement. The controversy, he states, does not relate to the estate of a decedent nor does it concern any relation between a guardian and ward.

In *Matter of Sweeney* (155 Misc. 461 [1935]) which is submitted to the court as authority upon that subject, it is true that Surrogate SLATER appears to express a contrary opinion. The facts in that case, however, are quite different from the facts here.

In *Matter of Sweeney (supra)* the deceased marked certificate No. P 2323 for thirty-seven shares of Yonkers National Bank and Trust Company as follows: " Jeremiah J. Sweeney, in trust for Ellen McGeory " and certificate No. 6243 for seventy shares of capital stock of Yonkers Building and Loan Association was made out " Jeremiah J. Sweeney, in trust for William Sweeney ". There was also a bankbook showing a deposit in Yonkers National Bank and Trust Company by decedent in trust for William Sweeney.

Where a party declares himself to be a trustee the beneficial interest in the property becomes vested in a *cestui que trust* without further action and the *cestui que trust* may enforce his rights.

In *Matter of Sweeney (supra)*, the proceeding was brought to compel the administrators to deliver the property to the *cestui que trust* and the court determined there that valid trusts had been consummated and the *cestui que trust* were entitled to the certificates of stock and to the bankbook.

In *Matter of Lyon* (266 N. Y. 219 [1935]) where property was transferred by a mother to her daughter in trust by an *inter vivos* deed of trust the Court of Appeals has held that the transaction between the parties consisted of affairs concerning

a trustee and *cestui que trust* and cannot be regarded as the affairs of the decedent's estate and that the only forum in which a successor could be appointed was the Supreme Court.

In *Matter of Ihmsen* (161 Misc. 789 [1937]) it was held that even though the various revisions of section 40 of the Surrogate's Court Act have vastly broadened the functions of the court, it is still, in essence, one for the administration of justice in " matters relating to the affairs of decedents " as distinguished from controversies involving the rights of the living.

The court further holds that the appropriate sections of the Surrogate's Court Act expressly vest the Surrogate with jurisdiction over testamentary trustees and preserve silence in respect to trusts *inter vivos,* and when read in connection with the general powers granted by section 40 of the Surrogate's Court Act must be taken as clear evidence of a legislative purpose to exclude jurisdiction of the Surrogate to determine the effect of a trust agreement between living persons.

In *Matter of O'Flynn* (174 Misc. 1025 [1940]) it was held that while in a direct proceeding the jurisdiction of the Surrogate does not extend to the adjudication of the title to realty, the jurisdiction does inhere in the course of a determination of the issues on an accounting of the trustees whom the objector alleges was guilty of culpable nonfeasance in failing to reduce to possession certain alleged assets of the estate, viz., a parcel of real estate.

The Surrogate's obligation to determine whether the title to the asset did, or should have passed to the trustee is merely incidental and is clearly within his statutory authority.

Here the issue clearly constituted a matter relating to the affairs of a decedent.

In *Matter of Baruch* (176 Misc. 344 [1941]) it was held that where all interested parties entered into an agreement which provided for discharge of the executors and trustees for distribution of assets of an estate the rights of the parties are measured by the said agreement and are enforcible in the Supreme Court only since this does not constitute a matter relating to the affairs of a decedent.

In *Matter of Gray* (176 Misc. 829 [1941]) the court held that in attempting to ascertain the intention of the testator the Surrogate had not attempted to determine the question of the validity in whole or in part of the exercise of the power of appointment over the *inter vivos* fund. The validity or invalidity of the exercise and its scope must be determined in the Supreme Court in an appropriate proceeding or action.

In *Matter of James* (189 Misc. 24 [1946]) the court held that the Surrogate's Court had no jurisdiction to make any determination in respect to the distribution of the property in the *inter vivos* trusts.

In *Matter of Goodrich* (272 App. Div. 967 [1947]) the issue as to the giving of deeds by the decedent was litigated in connection with a proceeding to construe the last will and testament, the construction being asked to determine the ownership of two parcels of real estate in question and the proceeding involving an accounting, the conclusion of the court was to the effect that a determination here did involve the affairs of a decedent's estate.

The authorities examined indicate that the affairs of a decedent's estate are not involved where a person in his lifetime executed a trust deed of property which thus became separated from the estate of which he died possessed, even though the terms of the trust parallel the terms of the will and even though the parties interested in each instance were the same parties. On the contrary such an *inter vivos* trust must be held to be a transaction concerning a trustee and a *cestui que trust*.

Enter decree accordingly.