Harold Baer, J.
The order herewith is the result of many conferences with the special guardian and the attorneys for the petitioner. A previous memorandum (Jan. 27, 1976) explained the conflict of interest which precluded the appointment of the petitioner as sole conservator. The reports of the special guardian and the hearing held by the court confirmed the necessity for the appointment of a qualified third-party attorney to act with the petitioner as coconservators.
There was request for the appointment of a bank as the conservator. A bank was appointed in one instance (Matter of Schnelle, 74 Misc 2d 226), but the circumstances were unusual. This is mentioned because this court would refuse to appoint a bank as conservator. Section 77.03 (subd [a], par [3]) of the Mental Hygiene Law does include "a corporate body” as being eligible foi appointment as conservator. It is clear, however, that the Legislature never intended that banks be eligible as "the corporate body”. See New York State Legislative Annual (1974, p 178): "The bill is intended to encourage private social agencies and public agencies to petition and act as conservators when they have a genuine interest in the financial and personal well-being of the proposed conservatee.” In the matter before this court accommodation was made for a bank, under agreement with the conservators to handle *401 financial matters, with respect to custody of securities and investment.
When article 77 of the Mental Hygiene Law was enacted in 1972 (L 1972, ch 251), the purpose was "to benefit older impaired persons * * * [to] provide them with necessary services, and enable them to have their income applied to the expenses of maintaining and treating them in the community as long as possible.” (NY Legis Ann, 1974, p 178.) After complaints and inquiries by the Legislature, the need for change resulted in the amendments to article 77 of the Mental Hygiene Law (L 1974, ch 623). The amendment broadened the scope of the conservators and now the court is required to:
"Set forth the petitioner’s court approved plan for the preservation, maintenance, and care of the conservatee’s assets and personal well-being, including the provision of necessary personal and social protective services to the conservatee; moreover, that the conservator’s duties include providing for the personal well-being of the conservatee.
"The conservatee’s independence and rights are protected by (a) individualizing these proceedings by directing the court to set forth the duration of the conservatorship, and the extent of the conservatee’s income and assets which are to be placed under the conservatorship; (b) limiting the 'control, charge and management’ of the conservatee’s estate to the terms of the court order appointing a conservator; (c) allowing the court to conserve his estate by fixing the conservator’s compensation at a reasonable level below that normally granted to executors and administrators”. (NY Legis Ann, 1974, p 178.)
The powers and duties of the conservators are set forth in the amended law (Mental Hygiene Law, § 77.19, subd [3]), which casts an additional duty on the court, "However, the court may add, withdraw, restrict, or limit any of the aforesaid powers during the term of the conservatorship”.
There have been no appellate court interpretations of the conservatorship law as amended. It seems clear however, that the Legislature in view of increasing life expectancy had in mind the protection of the increasing number of elderly persons who were unable to manage their own affairs — personal, economic or both. The law is gauged for persons with small and moderate estates, and to protect them against excessive costs of administration. It was not contemplated that *402 assets of the amount owned by the conservatee herein would be administered under article 77 of the Mental Hygiene Law. They would more likely be administered by a committee appointed under article 78 of the Mental Hygiene Law.
Nevertheless, size of the estate notwithstanding, article 7.7 may be applied and must be interpreted. The order signed herewith covers each of the matters required under the Mental Hygiene Law — article 77 generally, and particularly under sections 77.19 and 77.21. A reasonable fee was granted to the special guardian (Mental Hygiene Law, § 77.09) who rendered substantial services and also to the petitioners’ attorneys who rendered substantial services when this petition developed a conflict of interest controversy. A fee for the conservators was fixed by the court (Mental Hygiene Law, § 77.27). Ordinarily this section may provide for a perfunctory fixation of fees in a small estate but not so in this matter where the corpus of the estate exceeds $2,500,000, and the annual income is in excess of $70,000.
Before the 1974 amendment, compensation to a conservator was the same as allowed to a committee appointed pursuant to article 78 of the Mental Hygiene Law. That article in subdivision (a) of section 78.21 provides that compensation "shall be at the same rates as that of an executor or administrator” (SCPA 2307). It also provides for additional compensation, "as to the court may appear just” on a quantum meruit basis. The 1974 amendment to section 77.27 (L 1972, ch 251), that "compensation of a conservator shall be fixed by the court at the time of appointment” does not do away with the application of section 78.21 as a guide. In the moderate estate, fixation of fees will continue to follow the formula as indicated for executors and administrators at annual or intermediate accounting (Mental Hygiene Law, § 77.31). In addition, quantum meruit will guide the court on applications for additional fees. Also, in setting the fee of a conservator "at the time of appointment”, that fee can be fairly estimated by the amount of the corpus of the estate (SCPA 2307), and it would, in most instances, be reasonable and not excessive. However, a different problem arises in an estate in which the corpus exceeds $2,500,000. The fee for receiving and paying out such a sum would, in this court’s opinion, be excessive. Nevertheless, conservators must be compensated for their services and for the responsibilities which they assume. The court knows of some services which must be performed within the next year *403 but not all. Also, the fee is fixed at this time in lieu of any commissions on the corpus of the estate. The conservators may, if so advised, apply for additional fees for any unusual services, at the time of filing intermediate accounts. Also, annually, they will be entitled to commissions on income received and paid out but not in excess of commissions as provided for in section 78.21 of the Mental Hygiene Law.
This memorandum accompanies the order signed herewith as an explanation of the contents of that order and an interpretation of article 77 of the Mental Hygiene Law, as amended in 1974, particularly as it may apply to substantial estates.