OPINION OF THE COURT
Hilda G. Schwartz, J.
This is an application by the Department of Social Work of *41 Bellevue Hospital Center, by its caseworker Gladys R. Falk, for the appointment of a conservator for the maintenance and care of the proposed conservatee’s assets and personal well-being pursuant to article 77 of the Mental Hygiene Law. A hearing was held and a number of detailed reports submitted.
The instant petition emphasizes the significance of the State Legislature’s 1974 amendment of article 77 of the Mental Hygiene Law, in clarifying the authority of private social agencies and public agencies to petition for the appointment of conservators when they are concerned for the well-being, safety and security of the individual who has come to their attention. In 1972 by enactment of the conservatorship statute (L 1972, ch 251, as amd by L 1974, chs 623, 624) the Legislature made clear its intent to provide property management and personal care for those whose capacity to manage their affairs is impaired by illness, age or other causes, without affixing the stigma of a judicial finding of incompetence. It helped to insure that this effective and dignified device for aiding those in need of assistance became readily available. (NY Legis Ann, 1974, pp 176, 178.)
In this proceeding the proposed conservatee, 63 years of age, was found lost, suffering from malnutrition and dehydration. At Bellevue Hospital, she was found to be in need of surgery. By dint of the prompt efforts of the petitioner, her attorney, the guardian ad litem appointed by the court, and her relatives, she is in a secure home in the suburbs near her cousins; her physical condition is dramatically improved, the surgery has been performed with good recovery. Her substantial assets have been located and their management, hitherto neglected, now provided. The attorney for the petitioner and the guardian ad litem have devoted much time and effort to reconstructing the background and extent of the property holdings and to submitting a plan for the approval of the court. The guardian, as detailed in two exhaustive and lengthy reports, located very substantial assets including stocks, bonds, business interests, dividends, back salary, annuities, bank accounts and real estate. The guardian discovered parcels of real property in New York and Canada on the verge of being lost through tax foreclosure, which was successfully halted.
Present at the hearing, in addition to the proposed conservatee herself, were the petitioner and her attorney, the guardian ad litem, the cousin of the proposed conservatee, who with her mother had a previous close relationship; the *42 attorney for the business corporation in which the conservatee had a 50% interest; the attorney for the estates of her parents and the attorney for the cousin. After the hearing, and upon all the evidence presented, the court finds by clear and convincing proof that the proposed conservatee has suffered substantial impairment of her ability to care for her property and person. The only known relatives are cousins, one of them in her eighties and another, her daughter, Eileen Curley. Eileen Curley has testified to a readiness and ability to serve as conservator. She is the closest relative of the proposed conservatee capable of serving in the capacity of conservator. She has had business experience as an office manager and personnel director with a degree in personnel management. Her husband is an attorney. There was at one time a close family relationship, in particular between Mrs. Curley’s mother and the proposed conservatee. She has evinced the capacity and willingness to do everything necessary to look after the interest of her cousin.
Since Mrs. Curley’s mother appears to be the closet living relative, Mrs. Curley is a potential distributee of the estate. In addition, the size and complexity of the holdings, including a half interest in a going business of which the conservatee is an inactive member of the board, require, in the court’s view, the designation of a coconservator, preferably one with financial experience.
The management of the property and assets of the proposed conservatee have for a period of time, been neglected. She owns, in addition, to a 50% interest in a large business, substantial stock holdings, bank accounts, annuities and real property, estimated to total well over $2,100,000. Her annual income is estimated at over $85,000.
The office manager of the business owned in part by the proposed conservatee, and acquainted with tha latter for 38 years, also indicated she would be willing to serve as conservator. She testified that the co-owner of shares of the corporation, also holding 50%, was chairman of the board and vice-president, her daughter was the president and executive director of the company and her grandson the executive vice-president.
The enactment of article 77 of the Mental Hygiene Law in 1972 (L 1972, ch 251) was "to benefit older impaired persons * * * [to] provide them with necessary services, and enable them to have their income applied to the expenses of main *43 taining and treating them in the community for as long as possible.” (NY Legis Ann, 1974, p 178.) In 1974 the Legislature broadened the scope of the conservators and provided that the court set forth a court approved plan for the preservation, maintenance and care of conservatee’s assets and personal well-being. The powers and duties of the conservators are set forth in the law as amended (§ 77.19), which also provides that "the court may add, withdraw, restrict, or limit any of the aforesaid powers during the term of the conservatorship.” As was stated by the court, in a conservatorship proceeding where the assets were similarly over two million dollars (Matter of Huffard, 85 Misc 2d 399, 401-402): "The law is gauged for persons with small and moderate estates, and to protect them against excessive costs of administration. It was not contemplated that assets of the amount owned by the conservatee herein would be administered under article 77 of the Mental Hygiene Law.” The 1974 amendment of section 77.27 provides that compensation of a conservator shall be fixed by the court at the time of appointment. At the time of appointment the court knows of some services which must be performed within the next year but not all. It does not do away with the application of section 78.21 as a guide.
However, in an estate of $2,000,000 or more, allowing such a fee to each conservator would be excessive in the court’s view. Nevertheless, conservators are entitled to be compensated for the responsibilities they are charged with and the services they render. Accordingly, the order herein will provide the compensation to be allowed to the conservators. If any unusual services become necessary, the conservators, if so advised, may apply for additional fees at the time of filing intermediate accounts.
The size and variety of the assets prompted a suggestion that a bank be appointed as a coconservator. Although in one instance in this State, a bank was appointed (Matter of Schnelle, 74 Misc 2d 226), the circumstances there were unusual. While section 77.03 (subd [a], par [3]) of the Mental Hygiene Law permits "a corporate body” to be appointed conservator, it is clear that the Legislature did not intend that banks be eligible. "The bill is intended to encourage private social agencies and public agencies to petition and act as conservators” (NY Legis Ann, 1974, p 178; cf. Matter of Huffard, supra).
In the instant proceeding the court has made provision in *44 the plan approved for the retaining by the coconservators of a financial professional, preferably within a bank, to advise, manage and handle financial matters with respect to investments, custody of securities and protection of the conservatee’s assets.