OPINION OF THE COURT
Rose L. Rubin, J.
The conservatee, Mary Kurnyk, by motion dated September 26,1980, sought an order compelling her conservator, Eric S. Gray, Esq., to sell an apartment building owned by her and to distribute the net proceeds equally to her two daughters, or, in the alternative, to convey the property to them. In addition, she moved for a $50 per week increase in the support payments made to her by the conservator. Mr. Gray, appearing pro se, opposed a gift of the property or of the proceeds derived from its sale. Counsel for one of the conservatee’s daughters, Mrs. Amelia Ross, filed an affirmation in support of the motion.
I
The papers filed by the respective parties disclose the following information. Mrs. Kurnyk is a 92-year-old widow. Her only children are her two daughters, Ruth Wallace and Amelia Ross. Since June, 1977, she has resided with Mrs. Wallace and her son-in-law in California. She receives $383 a month from Social Security. Additional funds are supplied by the conservator to pay for health-related and other expenses. Additional costs for her *1020 care have been absorbed by the Wallaces. Mrs. Ross resides in Florida and does not contribute to her mother’s support. In 1979, upon application of the conservator, a court order permitted Mrs. Kurnyk to make a gift of $3,000 to each of her daughters.
The building in question is a six-family apartment house. Its estimated market value is between $80,000 and $90,000. It has been managed by Mr. Gray since his appointment in 1976. In 1979, the building generated gross income of $14,430.10 and expenses of $8,755.53, providing a net income of $5,674.57. Mrs. Kurnyk’s other assets include approximately $32,000 in bank accounts. Thus, her total annual net income is approximately $11,175.
On November 5, 1979, Mrs. Kurnyk executed a will in California. Under the terms of her will, the residuary estate, which includes the apartment building, is bequeathed to her daughters, provided they survive her. In her affidavit, the conservatee expressed her desire to make a lifetime gift to her daughters of the building itself or the proceeds from its sale.
Based upon these facts, and upon the consent of the parties, this court, by order dated January 5,1981, granted the motion to increase the conservatee’s support payments by $50 per week. Decision was reserved on the remainder of the application, pending a report by the conservator. He was directed to travel to California to interview Mrs. Kurnyk and to have a psychiatrist examine her.
A hearing was held on the conservator’s report, which includes a report by Dr. William E. Sigurdson, a psychiatrist in Claremont, California. To aid the court in its decision, Mr. Gray furnished a tape recording of his interview with Mrs. Kurnyk, which lasted one and one-half hours.
Mr. Gray’s report discloses that Mrs. Kurnyk is well cared for. The Wallaces and Mrs. Kurnyk live in a triple-wide mobile home in which Mrs. Kurnyk has her own bed and bathrooms. In her conversation with Mr. Gray, Mrs. Kurnyk was intelligently aware of the fact that her daughters would receive her property upon her death, pursuant to the terms of her will, but, unequivocally stated that she *1021 wanted them to have it now. She indicated that she no longer wished to be burdened with the ownership of the building. The tape of the conservation confirms Mrs. Kurnyk’s clearly expressed wish to make this gift.
Mrs. Kurnyk was examined by Dr. Sigurdson for approximately 45 minutes. Prior to his questioning of Mrs. Kurnyk he was informed of the nature and purpose of the visit by Mr. Gray. Dr. Sigurdson’s report confirms that the conservatee is well oriented in all spheres, co-operative and has good remote and recent memory. Her thinking and reasoning were clear and she understood the questions asked. Dr. Sigurdson found that Mrs. Kurnyk was mentally able to make a reliable and independent decision concerning the sale or conveyance of the property.
At the hearing, the conservatee, Mrs. Wallace and Mrs. Ross were represented by counsel. Mr. Gray testified that he was satisfied that Mrs. Kurnyk was capable of making the decision in question. He qualified his opposition to the conservatee’s motion for an order directing the sale of the property, by seeking an order dividing the proceeds of the sale equally amongst Mrs. Wallace, Mrs. Ross and the conservatee, Mrs. Kurnyk’s share to be held by the conservator for her support. The other parties joined in his application.
II
By statute (Mental Hygiene Law, § 77.21), a conservator is obligated to provide for the maintenance, support and well-being of the conservatee. The powers conferred upon the conservator may be increased or restricted during the terms of the conservatorship by the court (Mental Hygiene Law, § 77.19). Before disposing of real property owned by a conservatee, the conservator must obtain court approval (Mental Hygiene Law, §§77.19, 78.15, subd [d]). Where a fiduciary seeks to dispose of assets of an incompetent or a conservatee by inter vivos transfers, the court may be called upon to substitute its judgment for that of the disabled person. (Rohan, Caring for Persons Under a Disability: A Critique of the Role of the Conservator and the “Substitution of Judgment Doctrine”, 52 St John’s L Rev 1, 13.)
*1022 Here, issue is joined on the converse situation. The conservatee wishes to make an inter vivos gift of some of her assets to her ultimate beneficiaries, her daughters, and the conservator opposes. Query: Is it within the court’s discretion to grant the conservatee’s application notwithstanding the conservator’s opposition? The court answers this question in the affirmative.
The few decisions addressing themselves to the “substitution of judgment doctrine” pertain to the distribution of the assets of declared incompetents (see, e.g., Matter of Flagler, 248 NY 415; Matter of Lord, 227 NY 145; Matter of Fairbairn, 56 AD2d 259; Matter of Schley, 201 Misc 522, affd 279 App div 1084). None relate to conservatees.
These cases, in general, focus upon two considerations: (1) the needs . and assets of the incompetent; and (2) whether if capable, the incompetent would have made the transfer. As summarized by the Appellate Division, Fourth Department, in Matter of Fairbairn (supra, pp 263-264): “In applying the doctrine of ‘substitution of judgment’ the court has a primary duty of protecting the estate of the incompetent both for her own needs in her lifetime and to the extent that at her death her estate will devolve substantially as she intended, when sane. Only the special intervening needs of persons close to her, whom she may be found to want to assist, may be permitted to invade the estate and reduce the corpus.”
The authority of a conservator is similar to that of a committee. Subject to limitations imposed by the court, a conservator has control of the conservatee’s property, and is imbued with powers and duties equal to that of a committee (Mental Hygiene Law, § 77.19). Additionally, the Legislature has expressly declared its preference for conservatorships over committees (Mental Hygiene Law, § 78.02). It is, therefore, logical to apply the “substitution of judgment doctrine” to conservators, with the caveat that the conservator act in all instances upon notice to the conservatee. This affords the conservatee an opportunity to object to the position taken by the conservator, and the issue can be resolved at a hearing.
In light of the substantial proof of the conservatee’s ability to think rationally with reference to the disposition *1023 of her property and her own financial needs, the court finds no reason to intrude upon her individual rights by substituting the judgment of the conservator for hers. Indeed, at the hearing, the conservator concurred that Mrs. Kurnyk was capable of making the decision in question. He withdrew his opposition to her application, with one exception. He proposed that one third of the proceeds of the sale be retained by the conservator, or his successor in office, for investment to yield additional income. The issue of duress upon Mrs. Kurnyk was not raised by any party to the proceeding.
Accordingly, that portion of the conservatee’s application previously held in abeyance is granted to the extent that the conservator, or his successor in office, is authorized to sell Mrs. Kurnyk’s real property, located at 31-40 42nd Street, Astoria, New York, and to enter into a contract of sale, subject to the approval of the court. Upon the sale of the property, one third of the net proceeds shall be distributed to Amelia Ross, one third to Ruth Wallace, and the remaining one third shall be retained by the conservator or his successor in office.
' The $500 expended by Eric S. Gray, for the expenses of his trip to California is hereby ratified and confirmed. Mr. Gray is additionally allowed the sum of $3,000 for legal services rendered by him in this proceeding.