OPINION OF THE COURT
Edward J. Greenfield, J.
Petitioner, coconservator of the property of conservatee A. Chauncey Newlin (ACN), moves to invalidate a trust created by ACN and his wife.
*816 On September 10, 1980, ACN, a former senior partner and tax counsel at a major New York City law firm, and his wife, executed an agreement for the purpose of establishing a trust as defined in the Internal Revenue Code (US Code, tit 26, § 664, subd [d]). ACN and his wife, as grantors appointed themselves as trustees. ACN and his wife, by instrument in letter form, formally “transferred” to themselves as trustees, certain enumerated and described assets including a townhouse in New York, New York, shares in á co-operative corporation and a proprietary lease for a designated apartment, shares of publicly owned corporations, art objects at specified locations, tangible personal property at the co-operative apartment and office equipment and furnishings at the respective offices of ACN and his wife. On November 21, 1981, the cotrustees sold the various assets of the trust listed in the September 10, 1980 trust indenture to themselves for $2,000,000. Payment was made by a demand promissory note with interest at 10% per annum.
Prior to the sale of the trust assets, but subsequent to the creation of the trust, the sons of ACN petitioned to have a conservator appointed for him (Mental Hygiene Law, § 77.07). The case was a hotly contested one in which ACN and his wife were each represented by counsel. The matter came on for hearing before this court on June 20,1981 and after hearing the evidence, the court indicated that the petitioners had proved by clear and convincing evidence that ACN has “suffered a substantial impairment and is unable to care for his property and that there is a need for the appointment of a conservator of the property of” ACN. Thereafter, by order dated August 5, 1981, the court appointed petitioner, James Dana, and ACN’s wife as coconservators and further directed that Mr. Dana obtain a judicial determination as to the validity of the charitable remainder unitrust. Mr. Dana by moving to vacate the trust has thus complied with this court’s direction.
Charitable trusts are governed by strict statutory rules set forth in the Internal Revenue Code and the regulations of the Commissioner of Internal Revenue. The rules must be observed if the individual who creates the trust hopes to gain all the possible deductions or other tax benefits which *817 may be available. Among the permissible choices is the charitable remainder unitrust. Subdivision (c) of section 664 of the Internal Revenue Code (US Code, tit 26) provides that: “a charitable remainder unitrust shall, for any taxable year, not be subject to any tax imposed by this subtitle, unless such trust, for such year, has unrelated business taxable income”.
Section 664 (subd [d], par [2]) of the Internal Revenue Code (US Code, tit 26) defines a charitable remainder unitrust as a trust:
“(A) from which a fixed percentage (which is not less than 5 percent) of the net fair market value of its assets, valued annually, is to be paid, not less often than annually, to one or more persons * * * for the * * * lives of such * * * individuals,
“(B) from which no amount other than the payments described in subparagraph (A) may be paid to or for the use of any person other than [a charitable] organization * * *
“(C) following the termination of the payments described in subparagraph (A), the remainder interest in the trust is to be transferred to, or for the use of” a charitable institution.
The charitable remainder unitrust created by ACN and his wife on September 10, 1980, in form contains nothing that offends the law. The charitable institutions which are to equally share in the remainder of the trust following the death of the survivor of ACN and his wife are 16 educational, religious and eleemosynary institutions. The trustees of Columbia University and Lincoln Center for the Performing Arts, Inc., two of the charitable remainders have appeared in opposition to the petition. The State Attorney-General, notified of the pendency of this proceeding in accordance with EPTL 8-1.4 (subd [e], par [1]) has appeared in opposition for the remaining 14 institutions.
The petition seeks to invalidate the declaration of trust described in the September 10, 1980 agreement and letter upon the ground that there was no delivery of the property from ACN and his wife as grantors to ACN and his wife as trustees.
Under the circumstances here presented, actual delivery of such property is inappropriate and unnecessary *818 and a valid trust of such property for the benefit of the charitable cestuis must be deemed to have been created (see 1 Scott, Trusts [3d ed], § 31.1 [4], at p 259; § 24.2, at p 201; § 32.2, at pp 267-268; § 32.5; Matter of Brown, 252 NY 366; Matter of Sweeney, 155 Misc 461; Matter of Brunswick, 143 Misc 473; Matter of Liebowitz, 144 Misc 611; Matter of Naylor, 195 Misc 775; Matter of Smith, 144 Pa 428). Where a chattel does not admit of physical delivery, a symbolic delivery is sufficient (1 Scott, Trusts [3d ed], § 31, at p 245; cf. Matter of Kelsey, 29 AD2d 450, affd 26 NY2d 792; EPTL 13-2.1). Moreover, even where the trust property consists of registered bonds or stock certificates which, by their terms, are transferable only on the books of the corporation, such a transfer is not essential to the completion of the gift in trust (see Fehder v Furman, 54 NYS2d 820; Matter of Kelsey, supra; Matter of Nabif, 69 AD2d 904; 1 Scott, Trusts [3d ed], § 31, at pp 246-248).
The cases of Brown v Spohr (180 NY 201), Matter of Fontanella (33 AD2d 29) and Sussman v Sussman (61 AD2d 838, affd 47 NY2d 849) cited by the petitioner conservator are all clearly distinguishable from the facts here. Brown v Spohr (supra) involved a transfer to third persons as trustees. Matter of Fontanella (supra) also involved a transfer to a third person but there the evidence indicated that the transferor did not intend such third person to be a trustee, but merely an agent, so that, in effect, there was no intention to make a transfer in trust at all. Here the instrument clearly indicates an intention to create a trust.
Sussman v Sussman (supra) also involved a transfer to a third person, but the tax free bonds there involved were clearly never transferred to the third person, so it was held that since there was no effective transfer of such bonds to the third person, no valid trust with respect to them was ever created. Although the plaintiffs (the beneficiaries of the alleged trust) in Sussman attempted to claim that a letter of the alleged settlor was a declaration by him that he was holding such bonds himself as trustee for them, the opinion of the Court of Appeals, citing Farmers’ Loan & Trust Co. v Winthrop (238 NY 477, 487), clearly indicates that such letter failed to indicate an intention on the part *819 of the author to become a trustee himself. It was further noted by the Court of Appeals that the alleged trust corpus was not adequately designated or identified. None of these problems arise here because here the donors or grantors have clearly indicated their intention that they, themselves, were to be the trustees, and not some third person or persons. The assets placed in trust are clearly identified in the letter attached to, and referred to in, the trust instrument.
Petitioner further contends that even if the court finds that no physical delivery between ACN as grantor and ACN as trustee was necessary for the creation of a valid trust, there was still lacking the delivery between ACN as grantor and his wife as trustee and vice versa. This contention is without merit. Where, as here, property is transferred to two persons jointly as trustees they are treated as joint tenants; each is seized of the whole, subject to the rights of the other. (1 Scott, Trusts [3d ed], § 34, at p 282.)
The petitioner also urges that the trust should be set aside because the trustees specifically violated the terms of the trust. Article third of the trust provides, in pertinent part, that “the Trustees are prohibited from engaging in any act of self-dealing (as defined in § 4941[d])”. It is uncontroverted that by letter dated November 21, 1980, ACN and his wife as cotrustees wrote to themselves and offered to sell the assets listed in the trust agreement at the values specified in the agreement, to wit, $2,000,000. In payment, the purchasers were to give a demand promissory note with interest at 10% per annum payable quarterly to the cotrustees. On the same date, ACN and his wife, as purchasers, accepted the offer of sale and executed their acceptance of the terms of the sale.
The Internal Revenue Code (US Code, tit 26, § 4941, subd [d], par [1]) defines the term “self-dealing” to include “any direct or indirect — (A) sale or exchange, or leasing, of property between a private foundation and a disqualified person”. The trust here at issue would be included within the meaning of private foundation. Section 4946 (subd [a], par [1], els [A], [D]) of title 26 of the United States Code defines disqualified persons to include (A) substantial contributors to the foundation, or in this case to the trust or *820 (D) members of their families. Subdivision (d) of that section provides that a member of the family includes a spouse. It is thus clear that the actions of ACN and his wife as cotrustees in selling the assets to themselves would qualify as an act of self-dealing. However, the code exempts certain transactions. Section 4941 (subd [d], par [2], cl [D]) of title 26 of the United States Code provides: “(D) the furnishing of goods, services or facilities by a private foundation to a disqualified person shall not be an act of self-dealing if such furnishing is made on a basis no more favorable than that on which such goods, services, or facilities are made available to the general public”.
Whether this transfer would be exempt pursuant to the above-quoted section of the code presents a question of fact that must be resolved at a plenary hearing. Even if it be determined as a matter of fact that the sale to ACN and his wife individually was an act of self-dealing, which might subject the conservatee’s estate to substantial tax penalties, the potential consequences of these acts would not cause this court to set aside the trust. Rather, it would cause the court to invoke EPTL 7-2.4 to void the transaction (Genet v Hunt, 113 NY 158) and uphold the trust. To hold otherwise would give a trustee the power to vitiate a trust even though under the terms of the indenture, he or she lacks that power.
Lastly, in his reply brief* petitioner invites the court to invoke the so-called substitution of judgment doctrine whereby the court substitutes its judgment for that of the person under a disability in connection with dispositions of that person’s assets by inter vivos transfer.
The substitution of judgment doctrine is generally invoked in incompetency cases where a person who claims to be the natural object of the incompetent’s bounty, seeks an inter vivos transfer of a portion of the incompetent’s estate. In few reported cases, the courts discuss the two criteria for such transfer: (1) that the assets of the incompetent are sufficient to meet his needs and those whom he is under a duty to support during his lifetime and, to a lesser extent, *821 that the bulk of the estate will devolve substantially as intended by the incompetent when sane and (2) that if competent, the incompetent would have made the transfer (see, e.g., Matter of Flagler, 248 NY 415; Matter of Lord, 227 NY 145; Matter of Fairbairn, 56 AD2d 259, 263-264; Matter of Schley, 201 Misc 522, affd 279 App Div 1084; Matter of Fleming, 173 Misc 851, 853; Matter of Kernochan, 84 Misc 565, 569-570). This doctrine has been extended to conservatorship proceedings (Matter of Kurnyk, 109 Misc 2d 1019).
In no case, however, has the doctrine of substitution of judgment been applied to void a transfer of an incompetent’s or conservatee’s assets which transfer was presumably made at a time when the disabled was fully competent. The adjudication under article 77 of the Mental Hygiene Law of a person that he is in need of a conservator is prospective only. The court, however, after a full hearing on the facts, may find that at the time of the execution of the trust, ACN was not competent and that, therefore, it should be set aside.
Accordingly, the petition to set aside the trust is denied without prejudice to the commencement of a plenary proceeding for resolution of factual issues noted herein, if petitioner be so advised.

 The court notes that it is not the office of a reply brief to raise new theories of recovery thus foreclosing comment by opposing counsel. However, this court has determined that a limited discussion of the issue raised is appropriate.