■ In the Matter of JOHN H. COOK, JR., Respondent. LEFINI HOMES, INC., Appellant.—In a proceeding pursuant to Mental Hygiene Law article 77 seeking approval of a contract of sale of real property entered into by the conservatee prior to the appointment of the conservator, LeFini Homes, Inc. appeals from (1) so much of an order of the Supreme Court, Queens County (Dunkin, J.), dated October 11, 1985, as approved the sale of the property to the highest bidder at a court-ordered public auction, and (2) so much of an order of the same court (Leviss, J.), dated December 27, 1985, as declared that a contract of sale of the subject property, dated April 15, 1981, between the conservatee and the appellant, LeFini Homes, Inc., is null and void.

Ordered that the orders are affirmed insofar as appealed from, with one bill of costs.

On or about April 15, 1981, Alice Schildmacher entered into a contract whereby she agreed to sell certain premises to the

appellant, LeFini Homes, Inc. (hereinafter LeFini), for the sum of $75,000. The contract was drafted by Ms. Schildmacher's attorney, John H. Cook, Jr. Approximately five months later, on September 10, 1981, Mr. Cook was appointed conservator of the property of Ms. Schildmacher who, at that time, was nearly 90 years of age.

Sometime prior to the closing date of the contract, it was discovered, by means of a title search, that Ms. Schildmacher did not have clear title to the premises. The contract entered into by and between the parties, however, expressly provided: "If SELLER is unable to transfer title to PURCHASER in accordance with this contract, SELLER's sole liability shall be to refund all money paid on account of this contract, plus all charges made for: (i) examining the title, (ii) any appropriate additional searches made in accordance with this contract, and (iii) survey and survey inspection charges. Upon such refund and payment this contract shall be considered cancelled, and neither SELLER nor PURCHASER shall have any further rights against the other".

On June 8, 1983, nearly two years after the discovery of the defect in title, Mr. Cook, in his capacity as conservator of the Schildmacher property, instituted a proceeding to clear title, notwithstanding the existence of the contractual provision which expressly permitted the seller to cancel in the event of a cloud on title. Nearly two more years elapsed before the judgment clearing title was secured. Mr. Cook then commenced the instant proceeding to obtain court approval of the contract of sale, pursuant to Mental Hygiene Law § 77.25 and RPAPL 1711 and 1712. The value of the property, during this four-year interval, had steadily appreciated. Indeed, accordingly to a court-appointed appraiser, the property at the time of the commencement of the instant proceeding, had a fair market value of approximately $350,000.

The court, after conducting a hearing, declined to approve the contract of sale to LeFini, on the ground that Ms. Schildmacher lacked the mental capacity to execute a contract. The court, consequently, directed that the property be sold at a public auction. This appeal ensued.

The provisions of the Mental Hygiene Law pertaining to conservatorships were specifically designed to protect those who are unable to adequately manage and conduct their personal and business affairs as a consequence of some form of substantial impairment (see, Matter of Waxman, 96 AD2d 906; Matter of Forward, 86 AD2d 850; Matter of Berman, 61 AD2d

902, *appeal dismissed* 46 NY2d 850). Pursuant to Mental Hygiene Law article 77, the courts are empowered to appoint a conservator to manage the property of individuals like Ms. Schildmacher, who, due to advanced age, illness or other debilitating infirmities, are not capable of caring for their own affairs *(see,* Mental Hygiene Law § 77.01; *Matter of Niner,* 126 Misc 2d 1097; *Matter of Bauer,* 96 Misc 2d 40). The foregoing statute further provides that "[t]o the extent permitted by the court order appointing a conservator, any contracts, conveyances, or dispositions made by the conservatee shall be voidable at the option of the conservator" (Mental Hygiene Law § 77.25 [c]). It has been held, moreover, that the conservator's powers with respect to property are similar to those vested in a committee of the property of an incompetent *(see,* Mental Hygiene Law § 77.19; *see also,* 1966 Report of NY Law Rev Commn, at 331). "These include a duty to secure 'the special direction of the court * * * as prescribed in the real property actions and proceedings law' before disposing of any of the conservatee's real property" *(Matter of Battisti,* 112 AD2d 635, *appeal dismissed* 67 NY2d 674, quoting from Mental Hygiene Law § 78.15 [d]; *see also,* Mental Hygiene Law § 77.25 [c]; *Matter of Kurnyk,* 109 Misc 2d 1019). Although the appointment of a conservator need not necessarily entail a finding of incompetency on the part of the conservatee *(see,* Mental Hygiene Law § 77.25), the unavoidable limitations upon the conservatee's autonomy, as a result of the appointment, may "only be justified if the State, acting through the court, assures the ward's best interests [are] protected, and if the conservator exercises his substituted judgment accordingly" *(Matter of Scrivani,* 116 Misc 2d 204, 207). It is, therefore, imperative for the courts to carefully consider any proposed course of action which affects or implicates the conservatee's rights and interests *(see, Carter v Beckwith,* 128 NY 312), and for the courts to intervene, where necessary, in order to protect and promote the welfare of the conservatee *(see, Anonymous v Anonymous,* 3 AD2d 590; *Matter of Kurnyk, supra).* Furthermore, since the conservator essentially stands in the shoes of his conservatee and also functions as an agent of the court *(see, Rosenzweig v Bank of N. Y.,* 64 AD2d 599, *lv dismissed* 45 NY2d 711), it is not only appropriate but incumbent upon the conservator to discharge his duties in a manner which best serves his charge.

With these precepts in mind, we conclude that the court did not abuse its discretion in declaring the contract between the conservatee and LeFini null and void. We arrive at this

conclusion, however, for reasons different than those suggested by the court. Although the court found that Ms. Schildmacher was not capable of executing the contract, the record discloses that she was never adjudicated incompetent; therefore, nullification of this contract cannot properly be predicated on the ground of her incompetency. We do, however, find that the manner in which the conservator discharged his duties was inimical to the best interests of his ward. Therefore, this court, vested with the obligation to oversee the actions of a court-appointed conservator and charged with the statutory duty to control the property of the conservatee, for purposes of administration, sale or other disposition *(see,* Mental Hygiene Law § 77.25 [d]), declines to approve the consummation of the subject contract and, accordingly, we affirm the orders appealed from.

The contract of sale, which is the subject of this controversy, expressly provided that Ms. Schildmacher's sole liability, in the event that she was unable to convey clear title, would be to refund the down payment and to reimburse the purchaser for expenses incurred as a result of the title search and survey of the property. LeFini, the prospective purchaser, unequivocally agreed to the inclusion of this term in the contract. The present record discloses that the conservatee was, however, unable to convey clear title at the time of the execution of the contract. She, therefore, could have validly opted to cancel the contract, by remitting the appropriate sums, without incurring any further liability, were it not for the fact that she was subject to a conservatorship. Instead of pursuing the best interests of his ward, the conservator, Mr. Cook, waited nearly two years before instituting a proceeding to clear title. During this two-year interval and during the two ensuing years which had elapsed until a judgment clearing title was finally issued, the value of the property had increased dramatically. The conservator, who was aware of the contractual provision permitting cancellation, having drafted the agreement, and who thereafter should have been aware of the increasing value of the property, nevertheless, persisted for nearly four years, with what had clearly become an economically disadvantageous transaction. By pursing this course of action, the conservator proceeded with the contract notwithstanding the fact that he could have properly elected to rescind. Ms. Schildmacher, by virtue of her conservator's actions, was thus precluded from validly disaffirming the contract by invoking the provision for cancellation, and was additionally barred from entering into a new contract which more accurately

reflected the appreciated value of the property. The conservatee, in our view, should not be forced to accept the less favorable option chosen by her conservator, an option which would effectively "deprive [her] of the largest benefits obtainable under the law" (*Matter of Feltner v Teachers' Retirement Bd.*, 235 App Div 207, 210; *see also, Schwartzberg v Teachers' Retirement Bd.*, 273 App Div 240, *affd* 298 NY 741).

In this regard, we note that the contractual rights of the vendee are not being abrogated by our decision herein; nor are we exceeding our powers by declining to approve the sale of the premises to LeFini. Pursuant to RPAPL 1731, a court, confronted with a petition "praying for an order to dispose of [the] real property" of a conservatee, is empowered "to make such orders as may be necessary to further justice and to protect and conserve the rights and interests of the * * * conservatee". For purposes of this statute, the conservatee is considered a ward of the court with respect to the real property, income or proceeds at issue. In reviewing the actions of the conservator, as we are required by statute to do (*see,* Mental Hygiene Law § 77.29), we conclude that he should not have unnecessarily encumbered the property of his ward by subjecting the premises to this contract for a period of approximately four years, and that he should have exercised the agreed-upon option to cancel when it appeared that title would not be cleared imminently. Had Ms. Schildmacher not been subject to a conservatorship and had she elected to cancel the contract, at any time during the four-year period preceding the clearing of title, LeFini, the vendee, could not fairly claim that its contractual rights would have been abrogated or vitiated by such an election. Ms. Schildmacher should not be divested of her contractual rights merely because she was unable to assert these rights independently.

Our holding herein is not intended nor should it be interpreted to suggest that the terms of the subject contract were unfair or that there was any impediment affecting the legal enforceability of the contract at the time of its execution. Similarly, we do not mean to suggest that a valid agreement, entered into by a mentally competent individual, may be nullified by a court, *sua sponte,* in the event that individual becomes subject to a conservatorship. Where a conservator does not act in the best interests of his ward or does not properly execute his duties, a court may nullify actions taken on behalf of the conservatee and restore to that conservatee rights which might otherwise have been asserted. Any holding to the contrary would effectively render our powers and

discretion under the Mental Hygiene Law and the Real Property Actions and Proceedings Law substantially meaningless. Lawrence, J. P., Eiber, Kooper and Spatt, JJ., concur.